# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| IN RE APPLICATION OF **JULIO MIGUEL ORLANDINI-AGREDA** AND **COMPAÑÍA MINERA ORLANDINI LTDA.** FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782 | Case No. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR DISCOVERY IN AID OF A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782**

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| THE PARTIES | 1 |
| FACTUAL BACKGROUND | 1 |
| ARGUMENT | 6 |
|     I.   Petitioners Satisfy the Statutory Factors Governing Discovery Under Section 1782 | 6 |
|     II.   Petitioners Satisfy the Discretionary Factors For Discovery Under Section 1782 | 7 |
|         A.   Evidence Held by Sánchez de Lozada Is Likely Unobtainable Without Discovery Under Section 1782 | 8 |
|         B.   The Arbitral Tribunal Would Not Reject Assistance from Discovery Under Section 1782 | 9 |
|         C.   Petitioners Are Not Attempting to Circumvent Foreign or U.S. Policies | 9 |
|         D.   The Discovery Sought Is Not Intrusive or Burdensome | 10 |
| CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*,
  No. CIV.M19-88 BSJ, 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ................................... 9

*In re Application of Operacion y Supervision de Hoteles*,
  2015 WL 82007 (S.D.N.Y. Jan. 6, 2015) .................................................................................8

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
  673 F.3d 76 (2d Cir. 2012)....................................................................................................6, 10

*In re Chevron Corp.*,
  753 F. Supp. 2d 536 (D. Md. 2010) .......................................................................................6, 9

*In re Chevron Corp.*,
  No. 7:10-MC-00067, 2010 WL 4883111 (W.D. Va. Nov. 24, 2010)…………………………8

*In re Consellior SAS, Kerfraval, Ass'n De Documentation Pour L'industrie Nationale*,
  No. 13 MC 34, 2013 WL 5517925 (D. Conn. Oct. 2, 2013) ......................................................8

*Euromepa S.A. v. R. Esmerian, Inc.*
  51 F.3d 1095 (2d Cir. 1995).......................................................................................................9

*In re Ex Parte Application of Kleimar N.V.*,
  No. 16-MC-355, 2016 WL 6906712 (S.D.N.Y. Nov. 16, 2016) ................................................7

*Goenechea v. Davidoff*,
  No. CCB-15-3384, 2016 WL 560689 (D. Md. Feb. 11, 2016)...................................................7

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004).............................................................................................................. 6-9

*La Suisse, Societe d'Assurances Sur La Vie v. Kraus*,
  62 F. Supp. 3d 358 (S.D.N.Y. 2014)..........................................................................................8

*In re Metallgesellschaft AG*,
  121 F.3d 77 (2d Cir. 1997).........................................................................................................9

*In re Oxus Gold PLC*,
  No. MISC 06-82-GEB, 2007 WL 1037387 (D.N.J. Apr. 2, 2007)..............................................6

*In re Request for Judicial Assistance from the Dist. Court in Svitavy, Czech Republic*,
  748 F. Supp. 2d 522 (E.D. Va. 2010) .....................................................................................6, 7

*Ukrnafta v. Carpatsky Petroleum Corp.*,
  No. 3:09 MC 265(JBA), 2009 WL 2877156 D. Conn. Aug. 27, 2009).....................................8

**Statutes**

28 U.S.C. § 1782................................................................................................................ 1, 6-10

Petitioners Julio Miguel Orlandini-Agreda and Compañía Minera Orlandini Ltda. ("CMO") submit this memorandum of law in support of their Petition seeking to issue a subpoena pursuant to 28 U.S.C. § 1782 ("Section 1782") to direct Gonzalo Sánchez de Lozada ("Sánchez de Lozada") to provide deposition testimony and produce documents for use in an international arbitral proceeding.

## THE PARTIES

Julio Miguel Orlandini-Agreda ("Orlandini") is a U.S. citizen residing in the State of Florida. Orta Decl. ¶ 2. He is the majority owner of CMO, a mining company incorporated in the Plurinational State of Bolivia ("Bolivia"). Orta Decl. ¶ 3.

Gonzalo Sánchez de Lozada is a Bolivian citizen; former President of Bolivia; and the founder, former President, and former principal owner of Compañía Minera del Sur S.A. ("COMSUR"), a Bolivian mining company that partnered with the Bolivian state-owned mining company and was sold to Glencore International AG ("Glencore") or one of its subsidiaries in late 2004 or early 2005. Orta Decl. ¶ 5. Upon information and belief, Sánchez de Lozada resides at 4425 36th Street North, Arlington, Virginia. Orta Decl. ¶ 4.

## FACTUAL BACKGROUND

This Petition seeks discovery for use in aid of an international investment treaty arbitration to be initiated by Petitioners against Bolivia. In the arbitration, Petitioners will claim damages resulting from Bolivia's unlawful and expropriatory actions that took place before and after the sale of COMSUR by Sánchez de Lozada to Glencore. Orta Decl. ¶¶ 22, 23.

From about 2001 to 2005, COMSUR partnered with Bolivia's state-owned mining company Corporación Minera de Bolivia ("COMIBOL") to extract minerals from areas within the boundaries of CMO's concessions. Orta Decl. ¶¶ 8. COMSUR operated under the guise of an overlapping concession called "Seguridad I" and granted to COMIBOL, but its rights were

1

invalid against CMO's pre-existing concession rights, and the mining was therefore illegal. Orta Decl. ¶¶ 8, 9. Sánchez de Lozada remained the majority owner of COMSUR before and after his terms as President of Bolivia. Orta Decl. ¶ 5. To help Petitioners prove their case for liability and damages against Bolivia in the arbitration, Petitioners need the relevant documents and information that Sánchez de Lozada possessed as the owner and leader of COMSUR, one of the entities that conspired with Bolivia to illegally extract minerals from CMO's concessions. Orta Decl. ¶ 22.

**Bolivia Interferes and Expropriates CMO's Concessions**

CMO was formed in 1964 as a mining company and acquired several dozen concessions in Bolivia. Orta Decl. ¶ 6. Two of those concessions were located in Municipality of "Antequera" and the rest were in an area called "Totoral," located in the Municipality of Pazña. Orta Decl. ¶ 6. The Antequera concessions were bordered by concessions granted to the state-owned mining company COMIBOL, which held a joint venture with COMSUR to operate the concessions that adjoin CMO's concessions (the "Bolívar mine concessions"). Orta Decl. ¶ 7.

CMO's two concessions in Antequera were named "Veneros San Juan" and "Pretoria." In 1997, COMIBOL applied for and was granted a new concession called "Seguridad I," whose area was largely within and overlaid CMO's Veneros San Juan and Pretoria concessions. Orta Decl. ¶ 8. According to a report COMIBOL prepared in 2001, the purpose of obtaining the Seguridad I concession was to secure the joint venture's mining operations in the area. Orta Decl. ¶ 8. Also at COMSUR's behest, the Seguridad I concession was formally incorporated as part of the Bolivar mine concessions in 2001 through an addendum to the joint venture agreement between COMIBOL and COMSUR. Orta Decl. ¶ 8.

Under Bolivian law and the terms of Seguridad I, CMO's Veneros San Juan and Pretoria concessions enjoyed priority over Seguridad I concessions, because new concessions do not supplant pre-existing rights held by prior concession holders. Orta Decl. ¶ 9.

In 1999, COMIBOL and COMSUR tried to negotiate with CMO for an easement through CMO's Veneros San Juan and Pretoria concessions and the right to build galleries deep under CMO's concessions to move their minerals from the south to the north area of the Bolivar mine concessions. Orta Decl. ¶ 10. Those negotiations failed. Orta Decl. ¶ 10.

CMO later learned that COMIBOL and COMSUR had been and were continuing to illegally extract minerals from CMO's Veneros San Juan and Pretoria concessions. Orta Decl. ¶ 11. CMO tried to stop COMIBOL and COMSUR (later Sinchi Wayra—see below) from illegally extracting minerals from CMO's Veneros San Juan and Pretoria concessions through letters, meetings, and even pursuing criminal complaints, but this did not stop the illegal mining. Orta Decl. ¶ 11.

In late 2004 or early 2005, Sánchez de Lozada sold COMSUR to Glencore International AG, which took over COMSUR's role in the joint venture with COMIBOL for the operation of the Bolivar mine concessions. Orta Decl. ¶ 12. After the sale, COMSUR was renamed as "Sinchi Wayra." Orta Decl. ¶ 12.

Before the sale, COMSUR was 99.89% owned by Iris Mines & Metals S.A., which was in turn owned by Minera S.A. Orta Decl. ¶ 12. Sánchez de Lozada owned both Panamanian holding companies. Orta Decl. ¶ 13. Glencore purchased Iris Mines & Metals S.A. from Minera S.A. Glencore also purchased Kempsey S.A. and Shattuck Trading S.A., the two companies that held the other 0.11% of COMSUR. With the purchase of the three companies, Glencore became the sole shareholder of COMSUR itself at the beginning of 2005. Orta Decl. ¶ 13.

After the sale of COMSUR, Bolivia implemented a series of illegal measures that dispossessed CMO of its mining concessions and other property in Bolivia, papering over the illegal mining that COMSUR had conducted in CMO's concessions, and sealing CMO's loss of rights in its concessions and property.

**The Role of COMSUR and Sánchez de Lozada**

From 1993 until 2005, COMIBOL and COMSUR were joint-venture partners. Orta Decl. ¶ 7. In the joint venture, COMSUR was responsible for operating the Bolívar mine concessions pertaining to COMIBOL. Orta Decl. ¶ 7. These concessions that COMSUR operated included not only the concessions abutting CMO's concessions, but also eventually included the Seguridad I concession that overlapped CMO's Veneros San Juan and Pretoria concessions. Orta Decl. ¶ 8. In fact, it was COMSUR that spurred COMIBOL to incorporate the Seguridad I concession into the joint venture's Bolívar mining project in 2001. Orta Decl. ¶ 8.

In late 2004 or early 2005, Sánchez de Lozada sold COMSUR to another company, Glencore International AG. Orta Decl. ¶ 12. Sánchez de Lozada, as majority owner of COMSUR during the relevant period, was integral to the decision-making in the conflict and negotiations over the Seguridad I concession and CMO's concessions. And, in the process of selling COMSUR to Glencore, Sánchez de Lozada had to be familiar and likely provided Glencore with mining data—including data on minerals taken from CMO's Veneros San Juan and Pretoria concessions under the guise of Seguridad I—and information on the interactions between COMIBOL/COMSUR and CMO.

**The Arbitration and the Requested Evidence**

Petitioners are preparing to initiate an international investment treaty arbitration against Bolivia under the bilateral investment treaty between the United States and Bolivia (the "U.S.-Bolivia BIT") and governed by the UNCITRAL Arbitration Rules. Orta Decl. ¶¶ 16, 17. In the

-4-

arbitration, Petitioners will seek to hold Bolivia liable for the actions described above, among others. Orta Decl. ¶ 16. Petitioners will seek significant damages from Bolivia for the expropriation of CMO's mining concessions, as well as other violations of the U.S.-Bolivia BIT. Orta Decl. ¶ 17.

By their Petition, Petitioners seek discovery of evidence of the wrongful acts of Bolivia and the amounts of minerals extracted from CMO's concessions in the period of time leading to COMSUR's sale. Orta Decl. ¶ 22. Petitioners want this evidence for the arbitration, and Sánchez de Lozada likely has it. CMO has not had access to the Veneros San Juan and Pretoria concessions for many years and has not been privy to COMSUR's or COMIBOL's mining data from the Seguridad I concession. Orta Decl. ¶ 15. As the majority owner of COMSUR, Sánchez de Lozada must have had documents and information regarding the conflict with CMO and its concessions. And the sale of COMSUR likely generated significant documentation regarding COMSUR's historical mining operations, to which Sánchez de Lozada would have been privy.

Further, Sánchez de Lozada is currently chairman of Minera S.A.—the Panamanian holding company through which he held COMSUR and its parent, Iris Mines & Metals S.A., prior to COMSUR's sale. Orta Decl. ¶ 13. As explained above, COMSUR was responsible for operating the Seguridad I concession from at least 2001 to 2005, and the Seguridad I concession overlapped CMO's concessions. Orta Decl. ¶¶ 7, 8. Some quantity of minerals from CMO's concessions thus were extracted illegally by COMSUR in concert with COMIBOL before the sale of COMSUR to Glencore, and COMSUR illegally utilized CMO's concessions as a right of way through which it transported minerals mined from COMIBOL's concessions without paying a right-of-way charge to CMO. Orta Decl. ¶ 11. Evidence related to these issues is exactly what

Petitioners seek to help prove Bolivia's liability and the resulting damages in the arbitration. Orta Decl. ¶ 22.

## ARGUMENT

I.  **Petitioners Satisfy the Statutory Factors Governing Discovery Under Section 1782**

The purpose of Section 1782 is to enable parties like Petitioners to obtain "federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Section 1782 authorizes the Court to grant discovery for use in a proceeding in a foreign or international tribunal if: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made; (2) the discovery is for use in a foreign proceeding before a foreign tribunal; and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012); *see Intel*, 542 U.S. at 241; *see also In re Request for Judicial Assistance from the Dist. Court in Svitavy, Czech Republic*, 748 F. Supp. 2d 522, 525 (E.D. Va. 2010); *In re Chevron Corp.*, 753 F. Supp. 2d 536, 539 (D. Md. 2010). Once the "statutory requirements are met, a district court is free to grant discovery in its discretion." *Brandi-Dohrn*, 673 F.3d at 80; *see also In re Request from Svitavy*, 748 F. Supp. 2d at 525. Petitioners easily satisfy these three factors.

First, Sánchez de Lozada resides in this district. Orta Decl. ¶ 4.

Second, the discovery is for use in the arbitration against Bolivia under the UNCITRAL Arbitration Rules and pursuant to the U.S.-Bolivia BIT. Orta Decl. ¶ 17. The arbitration qualifies as a proceeding in a foreign or international tribunal. *See* Orta Decl. ¶ 17. "[B]ecause arbitral bodies are created by treaty and not by private parties, they do in fact constitute 'foreign tribunals for purposes of [Section 1782].'" *In re Chevron Corp.*, 753 F. Supp. 2d 536, 539 (D. Md. 2010); *see also In re Oxus Gold PLC*, No. MISC 06-82-GEB, 2007 WL 1037387, at *5

(D.N.J. Apr. 2, 2007) (BIT-based UNCITRAL tribunal constituted a "foreign tribunal" for Section 1782); *In re Ex Parte Application of Kleimar N.V.*, No. 16-MC-355, 2016 WL 6906712, at *2-3 (S.D.N.Y. Nov. 16, 2016) (London-based arbitration qualified as a "foreign tribunal" for Section 1782). To qualify under Section 1782, the arbitration "need not be 'pending' or 'imminent'" but can be "in reasonable contemplation." *Intel*, at 247; *see also Goenechea v. Davidoff*, No. CCB-15-3384, 2016 WL 560689, at *2 (D. Md. Feb. 11, 2016) (granting application because petitioner had "requested the evidence for use in reasonably contemplated proceedings that he may file"). Petitioners plan to file the arbitration in the very near future, and the arbitration therefore is "in reasonable contemplation" and qualifies under Section 1782. Orta Decl. ¶ 16.

Third, Petitioners will be the claimants in the arbitration and thus are "interested persons" under Section 1782. Orta Decl. ¶ 16.

## II. Petitioners Satisfy the Discretionary Factors For Discovery Under Section 1782

Because Petitioners have satisfied the Section 1782 factors, the Court has discretion to grant the Petition. In considering whether to exercise this discretion, courts examine the factors that the Supreme Court set forth in *Intel*: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the foreign proceedings, and the receptivity of the foreign entity to judicial assistance"; (3) "whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery requests are "unduly intrusive or burdensome." *In re Request for Judicial Assistance from the Dist. Court in Svitavy, Czech Republic*, 748 F. Supp. 2d 522, 525 (E.D. Va. 2010) (citing *Intel*, 542 U.S. at 264). These factors are satisfied here, and the Petition should therefore be granted.

### A. Evidence Held by Sánchez de Lozada Is Likely Unobtainable Without Discovery Under Section 1782

Courts tend to grant applications for discovery pursuant to Section 1782 if the discovery target is not a participant in the foreign proceeding. That is because, as the Supreme Court held, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264. Other courts have found the first *Intel* factor satisfied and have granted discovery where a discovery target was "not a participant, nor [was] it expected to be a participant, of the [foreign] arbitration proceedings." *Ukrnafta v. Carpatsky Petroleum Corp.*, No. 3:09 MC 265(JBA), 2009 WL 2877156, at *5 (D. Conn. Aug. 27, 2009); *see also In re Chevron Corp.*, No. 7:10-MC-00067, 2010 WL 4883111, at *2 (W.D. Va. Nov. 24, 2010) (same); *La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 362 (S.D.N.Y. 2014) (same); *In re Consellior SAS, Kerfraval, Ass'n De Documentation Pour L'industrie Nationale*, No. 13 MC 34, 2013 WL 5517925, at *2 (D. Conn. Oct. 2, 2013) (same).

Here, Sánchez de Lozada will not be a participant in the upcoming arbitration between Petitioners and the State of Bolivia, and his documents and testimony will thus be unobtainable without the relief sought in this Petition. Indeed, the arbitral tribunal would have no authority to order the discovery from Sánchez de Lozada, as he has not consented to arbitration and thus falls beyond the jurisdiction of the arbitral tribunal. Orta Decl. ¶¶ 19, 20. The unavailability of this discovery through the arbitration satisfies the first *Intel* factor. As another court held, "[b]ecause [the discovery target] is not a party to the [foreign proceeding] and the foreign tribunal lacks jurisdiction to compel his testimony, analysis of the first *Intel* factor suggests that the subpoena should be enforced." *In re Application of Operación y Supervisión de Hoteles*, 2015 WL 82007, at *6 (S.D.N.Y. Jan. 6, 2015).

### B. The Arbitral Tribunal Would Not Reject Assistance from Discovery Under Section 1782

As to the second *Intel* factor, there is no "authoritative proof," much less an indication, that the arbitral tribunal would reject the discovery sought here. In the absence of "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782"—such as where a representative of the foreign tribunal "has expressly and clearly made its position known"—Section 1782's "overarching interest in providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects" weighs in favor of granting discovery. *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995); *see also In re Chevron Corp.,* 753 F. Supp. 2d 536, 540 (D. Md. 2010); *In re Application of Gemeinshcqftspraxis Dr. Med. Schottdorf*, No. CIV.M19-88 BSJ, 2006 WL 3844464 at *6 (S.D.N.Y. Dec. 29, 2006).

No "authoritative proof" can be produced here. Under the UNCITRAL Arbitration Rules, the arbitral tribunal may receive all kinds of evidence, including evidence obtained from Section 1782 proceedings. Orta Decl. ¶ 18. In this case, there is no indication that the yet-to-be-constituted arbitral tribunal would reject evidence obtained through this Petition. Orta Decl. ¶ 21. Accordingly, Petitioners satisfy this second *Intel* factor.

### C. Petitioners Are Not Attempting to Circumvent Foreign or U.S. Policies

The third discretionary factor also weighs in favor of granting the Petition. Petitioners are not attempting to circumvent any proof-gathering limitations or other policies applicable to the arbitration or of the United States.

"[T]hrough § 1782 Congress has seen fit to authorize discovery which, in some cases, would not be available in foreign jurisdictions, as a means of improving assistance by our courts to participants in international litigation and encouraging foreign countries by example to

provide similar means of assistance to our courts." *In re Metallgesellschaft AG*, 121 F.3d 77, 80 (2d Cir. 1997). It is thus irrelevant whether the evidence would be discoverable or admissible in the arbitration itself. *See Brandi-Dohrn*, 673 F.3d at 82 ("[A]s a district court should not consider the discoverability of the evidence in the foreign proceeding, it should not consider the admissibility of evidence in the foreign proceeding in ruling on a section 1782 application.").

Petitioners would not circumvent any foreign law or policy by obtaining discovery in the United States. The UNCITRAL Arbitration Rules contain no prohibition against judicial discovery proceedings such as these and discovery obtained has been successfully submitted in UNCITRAL arbitrations. Nor would Petitioners run afoul of U.S. limits on discovery.

### D. The Discovery Sought Is Not Intrusive or Burdensome

Finally, Petitioners' requested discovery is not unduly intrusive or burdensome. It is narrowly tailored and focuses on the basic issues of the disputed rights to CMO's concessions and the minerals extracted from them.

### CONCLUSION

For all the foregoing reasons, Petitioners respectfully request that the Court enter an Order pursuant to Section 1782, granting them leave to serve the subpoena and conduct the requested discovery.

Dated: November 21, 2017.

/s/ Joy Odom
Joy Odom (VA Bar No. 84281)
joyodom@quinnemanuel.com

QUINN EMANUEL URQUHART & SULLIVAN, LLP
777 Sixth Street NW, 11th Floor
Washington, District of Columbia 20001-3706
(202) 538-8000

*Attorney for Petitioners*