UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| IN RE APPLICATION OF **JULIO MIGUEL ORLANDINI-AGREDA** AND **COMPAÑIA MINERA ORLANDINI LTDA.** FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C § 1782 | Case No. 1:17:mc-00029-LO-IDD |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
GONZALO SÁNCHEZ DE LOZADA'S
<u>MOTION TO QUASH SUBPOENA AND MOTION FOR PROTECTIVE ORDER</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................3

I.      INTRODUCTION ...................................................................................................6

II.     FACTUAL BACKGROUND....................................................................................7

III.    ARGUMENT ...........................................................................................................8

    A. This Court Should Deny Sánchez De Lozada's Motion To Quash Subpoena ...................8
        1. Sánchez de Lozada Fails to Show that the Subpoena is Overbroad or Unduly Burdensome ..................................................................................................9
        2. Petitioners Seek Only Documents and Deposition Testimony from Sánchez de Lozada that Are Relevant and Permitted Under Federal Rules of Civil Procedure, Are Not Overbroad, and Do Not Cause Undue Burden........................................11
        3. A Conclusory Assertion By Sánchez de Lozada's Counsel About His Alleged Lack of Knowledge or Memory of the Events is Not Sufficient To Quash the Subpoena.................................................................................................13
        4. Petitioners Do Not Have More Convenient, Less Burdensome Avenues For Discovery .................................................................................................14
        5. Sánchez de Lozada's Argument That Obtaining Discovery Is "Premature" Is Unavailing...............................................................................................15
    B. The Court Should Deny Sánchez De Lozada's Motion For Protective Order...................16
        1. Sánchez de Lozada Has Not Met His Burden For The Issuance Of A Protective Order ......................................................................................................16
        2. There Is No Legal Basis For Prohibiting The Deposition Until The Arbitration Is Filed Or Until The Arbitral Tribunal Orders Discovery.......................................17
        3. Written Questions Are Inappropriate In This Case And Sánchez de Lozada Should Be Orally Deposed By Petitioners.............................................................18
    C. The Cost For Complying With The Document Subpoena Should Not Be Shifted To Petitioners .................................................................................................................20
    D. Both of Sánchez de Lozada's Motions Should Be Denied And Costs And Fees Should Be Awarded To Petitioners Because Sánchez de Lozada, Through Counsel, Failed To Meet And Confer As Required By Local Rules.....................................................................21

IV.     CONCLUSION......................................................................................................24

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anker v. G.D. Searle & Co.,*
    126 F.R.D. 515, 518 (M.D.N.C. 1989) ................................................................11

*Bank of Mongolia v. M & P Global Fin. Servs.,*
    258 F.R.D. 514, 519 (S.D. Fla. Apr. 24, 2009).....................................................9

*Bell Inc. v. GE Lighting, LLC,*
    No. 6:14-cv-00012, 2014 U.S. Dist. LEXIS 56170, at *18 (W.D. Va. Apr. 23, 2014).....11, 21

*Big Ernie's, Inc v. United States,*
    2009 U.S. Dist. LEXIS 81937, at *3 (E.D.Va. 2009) ...........................................17

*Cappetta v. GC Servs. Ltd. P'ship,*
    No. 3:08-cv-00288, 2008 U.S. Dist. LEXIS 103902, (E.D. Va. Dec. 24, 2008)..... 9-10, 18, 21

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.,*
    334 F.3d 390, 402 (4th Cir. 2003) .......................................................................11

*CBS, Inc. v. Ahern,*
    102 F.R.D. 820, 822 (S.D.N.Y. 1984) ................................................................17

*Champion Pro Consulting Grp. v. Impact Sports Football, Inc.,*
    No. 1:12CV27, 2014 U.S. Dist. LEXIS 165825, at *2-3 (M.D.N.C. Nov. 26, 2014) ....... 10-11

*Eshelman v. Puma Biotechnology, Inc.,*
    No. 7:16-CV-18-D, 2017 U.S. Dist. LEXIS 196494, at *12 (E.D.N.C. Nov. 30, 2017).........13

*Goenechea v. Davidoff,*
    No. CCB-15-3384, 2016 WL 560689, at *2 (D. Md. Feb. 11, 2016)....................................18

*Horvath v. Deutsche Lufthansa, AG,*
    2004 WL 241671, at *4 (S.D.N.Y., 2004) ...............................................................20

*In re Application of Operación y Supervisión de Hoteles,*
    2015 WL 82007, at *6 (S.D.N.Y. Jan. 6, 2015)........................................................16

*In re First American Corp.,*
    184 F.R.D. 234, 241 (S.D.N.Y. 1998) ...................................................................21

*In re Subpoena Duces Tecum to AOL, LLC,*
    550 F. Supp. 2d 606, 612 (E.D. Va. 2008) ...........................................................10

*In re World Trade Ctr. Disaster Site Litig.,*
    No. 21 MC 100 AKH, 2010 U.S. Dist. LEXIS 96819, 2010 WL 3582921, at *1 (S.D.N.Y. Sept. 14, 2010).............................................................................................21

*Intel Corp. v Advance Micro Devices, Inc.*
    542 U.S. 241, 247 (2004).....................................................................................16, 18

*Intelligent Verification Sys., LLC v. Microsoft Corp.*,
    2014 U.S. Dist. LEXIS 198819, at *6 (E. D. Va. 2014) ....................................................... 19

*Kinetic Concepts, Inc. v. ConvaTec Inc.*,
    268 F.R.D. 226, 240 (M.D.N.C. 2010) .................................................................................. 11

*Medlin v. Andrew*,
    113 F.R.D. 650, 652 (M.D.N.C. 1987) ................................................................................. 17

*Mill–Run Tours, Inc. v. Khashoggi*,
    124 F.R.D. 547, 549 (S.D.N.Y. Feb.17, 1989) .................................................................... 20

*Momah v. Albert Einstein med. Ctr.*,
    164 F.R.D. 412, 417 (E.D. Pa. 1996) ................................................................................... 18

*NLRB v. Carolina Food Processors*,
    81 F.3d 507, 513 (4th Cir. 1996) .......................................................................................... 11

*NLRB v. G.H.R. Energy Corp.*,
    707 F.2d 110, 114 (5th Cir. 1982) ........................................................................................ 11

*Oppenheimer Fund. Inc. v. Sanders*,
    438 U.S. 340, 351 (1978) ...................................................................................................... 12

*Salter v. Upkohn Co.*,
    593 F.2d 649, 651 (5th Cir. 1979) ..................................................................................... 17

*Scott Hutchison Enters. v. Cranberry Pipeline Corp.*,
    No. 3:15-cv-13415, 2016 U.S. Dist. LEXIS 127770, at *7-8 (S.D. W. Va. Sep. 20, 2016) ...... 9

*SEC v. Dowdell*,
    No. 3:01CV00116, 2002 U.S. Dist. LEXIS 15877, at *10-11 (W.D. Va. Aug. 21, 2002) ...... 17

*Smith v. United Salt Corp.*,
    No. 1:08-cv-00053, 2009 U.S. Dist. LEXIS 82685, 2009 WL 2929343, at *5 (W.D. Va. Sept.
    9, 2009) ................................................................................................................................. 12

**Statutes**

28 U.S.C. § 1782 .......................................................................................................... 7, 16, 18

**Rules**

Federal Rules of Civil Procedure 26 ................................................................. 6, 11-12, 17, 22-23

Federal Rules of Civil Procedure 37 ............................................................................................ 24

Federal Rules of Civil Procedure 45 ..................................................................................... 11-12

Local Rules for the U.S. District Court, Eastern District of Virginia 7 ........................ 7, 11, 21-23

Local Rules for the U.S. District Court, Eastern District of Virginia 37 ...................... 7, 11, 21-24

# I.    INTRODUCTION

Julio Miguel Orlandini-Agreda ("**Orlandini**") and Compañía Minera Orlandini Ltda. ("**CMO**") (together, "**Petitioners**") respectfully submit this memorandum in opposition to Mr. Gonzalo Sánchez de Lozada's ("**Sánchez de Lozada**") Motion to Quash Subpoena ("**Motion to Quash**"), or, in the alternative, Motion for Protective Order ("**Motion for Protective Order**") (together, "**Motions**"). Sánchez de Lozada seeks to quash the subpoena requesting discovery in its entirety, or, in the alternative, seeks a protective order under Rule 26(c)(1) prohibiting his deposition until a certain time, directing his deposition to be conducted through written questions, and seeking costs from Petitioners for complying with the subpoena.

The Court should deny Sánchez de Lozada's Motion to Quash and Motion for Protective Order because (i) Sánchez de Lozada has not met the burden of proof to demonstrate that the subpoena is unduly burdensome; (ii) the subpoena seeks only relevant information and does not cause undue burden, oppression, and expense; (iii) Sánchez de Lozada has knowledge of the events subject to discovery; (iv) Petitioners have no more convenient, less burdensome avenues for discovery; (v) the discovery sought is not "premature"; (vii) Sánchez de Lozada has not met the burden of proof to demonstrate the need for a protective order; (viii) there is no legal basis for prohibiting the deposition until the arbitration is filed and the arbitral tribunal orders the discovery; (ix) an oral deposition is appropriate here, and (x) Sánchez de Lozada failed to comply with the meet and confer requirement under the Federal Rules of Civil Procedure and this Court's Local Civil Rules ("**Local Rules**") 7(E) and 37(E).

The Court should also deny Sánchez de Lozada's request to shift the cost of complying with the document request to Petitioners because the estimation of costs is unreasonable and

Sánchez de Lozada has not meaningfully attempted to meet and confer with Petitioners to address the issues raised.

Because Sánchez de Lozada filed unnecessary discovery motions that could have, at least in part, been avoided by engaging in a meaningful meet and confer, did not demonstrate any specific reason why Petitioners' subpoena should be quashed, and did not satisfy the requirements for a protective order, the Court should deny both of Sánchez de Lozada's motions and order Sánchez de Lozada to pay Petitioners' attorneys' fees and costs for responding to Sánchez de Lozada's unnecessary discovery motions.

## II.    FACTUAL BACKGROUND

Petitioners filed a Petition for Discovery in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 with this Court on November 21, 2017 (the "**Petition**," ECF No. 1). The Petition seeks documents and testimony from Sánchez de Lozada related to Compañia Minera del Sur S.A. ("**COMSUR**"), a company founded by Sánchez de Lozada and owned by him for many years. (Petition, ¶ 12.)  By Order dated December 15, 2017 (ECF No. 21), this Court granted the Petition, and Petitioners served the subpoena on Sánchez de Lozada on December 2, 2017.

Petitioners seek discovery for use in an international investment treaty arbitration against the Plurinational State of Bolivia to be filed soon (the "**Arbitration**"). By their Petition, Petitioners seek discovery of information and documents relevant to the Arbitration, including damages information related to the minerals extracted by COMSUR and Bolivian state-owned mining company COMIBOL from CMO's mining concessions in Bolivia.  At the time, COMSUR was the operator of COMIBOL's mining concessions that adjoined CMO's. The Petition seeks discovery of evidence of Bolivia's wrongful acts and amounts of minerals extracted from CMO's concessions in the period of time leading to COMSUR's sale to Glencore

in 2005 and Bolivia's expropriation of CMO's concessions, as well as disclosure of these wrongful acts during the sale of COMSUR to Glencore. (ECF No. 1, ¶¶ 10, 11, 12.)

On January 10, 2018, Sánchez de Lozada filed a motion to quash the subpoena, or, in the alternative a motion for protective order prohibiting Petitioners from orally deposing Sánchez de Lozada (together, "**Motions**"). Counsel for Sánchez de Lozada contacted Petitioners before filing the motion to quash and motion for protective order to communicate that Sánchez de Lozada has no responsive documents and requested Petitioners to withdraw their subpoena. (Hewett Decl., ¶ 2).

Sánchez de Lozada argues in his motions that he has no knowledge of the events described in the subpoena because he held no officer or director position in either COMSUR and Iris Mines & Metals S.A. at the time these companies were sold to COMSUR. (ECF No. 28-1, p. 9; ECF No. 28-2 ("**Raber Decl.**"), ¶¶ 6, 7). COMSUR was sold to Glencore in 2005 and Iris Mines & Metals S.A. was sold to Glencore in 2006. (Raber Decl., ¶¶ 6, 7). Sánchez de Lozada admits that he held a personal ownership interest in COMSUR and in Iris Mines & Metals S.A. at the time of their sale. (Raber Decl., ¶ 7). Furthermore, Iris Mines & Metals was the majority owner of COMSUR at the time of the sale. Iris Mines & Metals was owned by Minera S.A., which in turn was owned by Andean Resources S.A., which in turn was owned by Sánchez de Lozada. (Hewett Decl., ¶ 9). Sánchez de Lozada was president of Minera S.A., at the time COMSUR and Iris Mines & Metals were sold to Glencore. (Hewett Decl., ¶ 9). Based on the facts outlined above and the arguments set forth in this memorandum of law, the Court should deny Sánchez de Lozada's Motion to Quash and Motion for Protective Order.

## III.  ARGUMENT

### A.  This Court Should Deny Sánchez De Lozada's Motion To Quash Subpoena

### 1. Sánchez de Lozada Fails to Show that the Subpoena Is Overbroad or Unduly Burdensome

As an initial matter, the burden of demonstrating the need to quash a subpoena falls to the party seeking the order. A mere statement that a discovery request is "overbroad" or "unduly burdensome" does not suffice to state a proper objection, and a party opposing a discovery request must show with specificity, including with affidavits and other evidence, why a request is objectionable. *See Cappetta v. GC Servs. Ltd. P'ship*, Case No. 3:08-cv-00288, 2008 U.S. Dist. LEXIS 103902, at *10 (E.D. Va. Dec. 24, 2008) ("[A] party objecting on the grounds that a request is overly burdensome must submit affidavits or other evidence indicating with specificity the nature and extent of the burden."); *Scott Hutchison Enters. v. Cranberry Pipeline Corp.*, Case No. 3:15-cv-13415, 2016 U.S. Dist. LEXIS 127770, at *7-8 (S.D. W. Va. Sep. 20, 2016) ("A party objecting must explain the specific and particular way in which a request is vague, overly broad, or unduly burdensome. In addition, claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome.") (quoting *Bank of Mongolia v. M & P Global Fin. Servs.*, 258 F.R.D. 514, 519 (S.D. Fla. Apr. 24, 2009)); *Champion Pro Consulting Grp. v. Impact Sports Football, Inc.*, Case No. 1:12-CV-27, 2014 U.S. Dist. LEXIS 165825, at *3 (M.D.N.C. Nov. 26, 2014) ("'[W]hen a non-party claims that a subpoena is burdensome and oppressive, the non-party must support its claim by showing how production would be burdensome.'") (quoting *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008)); *see also* 9A CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, Federal Practice and Procedure §2463.1 at 507 (3d ed. 2008) ("That person cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena."). Except for a short declaration from Sánchez de

Lozada's counsel Mr. Stephen Raber, there are no other affidavits, under oath, most notably from Sánchez de Lozada himself, or other specific evidence establishing why the subpoena is overly burdensome.

The only argument regarding burden backed up by a declaration relates to Sánchez de Lozada's counsel's assertion that a search of the "reasonably accessible" electronically stored information ("**ESI**") would involve a review of 117,000 electronic files, "almost all of which are e-mails." (Raber Decl., ¶ 10.) Mr. Raber makes no allegation that the ESI is particularly difficult to access or review, nor is there an explanation about any specific obstacle that could complicate the seemingly routine review of e-mails. Sánchez de Lozada's claims of burden relate to nothing more than the "normal burden of document production," which falls short of proving that the subpoena should be quashed. *See Cappetta*, 2008 U.S. Dist. LEXIS at *10-11 (E.D. Va. Dec. 24, 2008) ("The mere fact that responding to a discovery request will require the objecting party to expend considerable time, effort and expense consulting, reviewing and analyzing huge volumes of documents and information is an insufficient basis to object to a relevant discovery request.") (internal citations and quotations omitted); *NLRB v. Carolina Food Processors*, 81 F.3d 507, 513 (4th Cir. 1996) ("The mere fact that compliance with the subpoenas may require the production of thousands of documents is . . . insufficient to establish burdensomeness.") (quoting *NLRB v. G.H.R. Energy Corp.*, 707 F.2d 110, 114 (5th Cir. 1982)).

Furthermore, the inflated number of documents Sánchez de Lozada claims will have to be reviewed is a direct result of the failure of Sánchez de Lozada's counsel to meet and confer. As Sánchez de Lozada's own counsel admits, the estimated cost of review "could be reduced through the use of search terms and date restrictions," thus minimizing the potential burden of complying with the subpoena. (Raber Decl., ¶ 10.) However, as explained further below,

Sánchez de Lozada's counsel did not confer in good faith as required under Local Civil Rules 7(E) and 37(E), and instead launched two premature and unnecessary discovery motions.

### 2. Petitioners Seek Only Documents and Deposition Testimony from Sánchez de Lozada that Are Relevant and Permitted Under Federal Rules of Civil Procedure, Are Not Overbroad, and Do Not Cause Undue Burden

In any event, Petitioners' subpoena is narrowly tailored to obtain discovery that is permitted under the Federal Rules of Civil Procedure and does not cause undue burden, oppression, and expense. "[D]iscovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003); *Bell Inc. v. GE Lighting, LLC*, Case No. 6:14-cv-00012, 2014 U.S. Dist. LEXIS 56170, at *18 (W.D. Va. Apr. 23, 2014). The scope of discovery under Rule 45, governing subpoenas issued to non-parties tracks Rule 26, *see Champion Pro Consulting Grp. v. Impact Sports Football, Inc.*, Case No. 1:12-CV-27, 2014 U.S. Dist. LEXIS 165825, at *2-3 (M.D.N.C. Nov. 26, 2014); *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 240 (M.D.N.C. 2010), which allows for the discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). *See also Anker v. G.D. Searle & Co.*, 126 F.R.D. 515, 518 (M.D.N.C. 1989) ("Rule 45(d) adopts the standards set out in Rule 26(b)(1), Fed. R. Civ. P., which permits discovery of any non-privileged matter relevant to the subject matter even if it would be inadmissible at trial, so long as it would appear reasonably calculated to lead to the discovery of admissible evidence.")

The threshold for establishing relevance for discovery sought from third parties is not very high. "[T]he scope of discovery for a nonparty litigant under a subpoena *duces tecum* [is] the same as the scope of a discovery request made upon a party to the action, and a party is entitled to information that is relevant to a claim or defense in the matter at issue." *Smith v.*

*United Salt Corp.*, No. 1:08-cv-00053, 2009 U.S. Dist. LEXIS 82685, at *5 (W.D. Va. Sept. 9, 2009) (internal quotations and citations omitted). A "relevant matter" under Rule 26(b)(1) is any matter that "bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund. Inc. v. Sanders*, 438 U.S. 340, 351 (1978). Further, because the underlying action is not before this Court, the Court should assume that all discovery requested is relevant or reasonably calculated to lead to the discovery of relevant evidence, rather than quashing the subpoena. *See Flanagan v. Wyndham Int'l, Inc*. 231 F.R.D. 98, 103 (D.D.C. 2005) ("A court with jurisdiction over a discovery dispute for an action pending in a different district generally has limited exposure to and understanding of the primary action. A court in such a situation should hence be cautious in determining relevance of evidence, and in case of doubt should err on the side of permissive discovery."); *Heat & Control, Inc. v. Hester Indus*., 785 F.2d 1017, 1024 (Fed. Cir. 1986) ("[C]ourts with jurisdiction over . . . discovery matters should be cautious in determining what is relevant evidence to the main action. Where there is doubt over relevance, the rule indicates that the court should be permissive.").

Petitioners' subpoena exceeds this low threshold for relevance. Petitioners' subpoena limits the documents requested to "subject matter relevant to the claims or defenses" in the Arbitration, and thus, are facially not overbroad. *See Eshelman v. Puma Biotechnology, Inc.*, Case No. 7:16-CV-18-D, 2017 U.S. Dist. LEXIS 196494, at *17 (E.D.N.C. Nov. 30, 2017). Certainly, Petitioners are not interested in sifting through thousands of irrelevant documents; their interest extends only to those documents that are "relevant to claims and defenses" in their imminent Arbitration.

Furthermore, the publicly known facts about Sánchez de Lozada's involvement in the companies and events at issue in the Arbitration are sufficient to show relevance. Sánchez de

Lozada founded COMSUR in 1962, was president of COMSUR until 1982, and held a personal ownership interest in COMSUR at the time of its sale to Glencore. (Raber Decl., ¶¶ 6-7; ECF No. 2-1 ("**Orta Decl**."), ¶ 5.) Sánchez de Lozada was also president of Minera S.A., the previous holding company for COMSUR and Iris Mines & Metals S.A., at the time of the companies' sale. (Hewett Decl., ¶ 9.) As has been publicly reported, Glencore purchased COMSUR for approximately $220 million. (Orta Decl., ¶ 12.) The supporting documents describing Sanchez de Lozada's ownership of the companies at issue (COMSUR and Iris Mines & Metals) are not "generic news articles" as claimed, but articles from reliable publications and official company press releases, including documents issued by Glencore and Bolivia. (Hewett Decl. Ex. A and B.)

Sánchez de Lozada is thus a key witness with respect to the Petitioners' claims in the Arbitration. It is revealing that Sánchez de Lozada's counsel have decided to omit mention of several important facts outlined above—most notably, his ownership and role as president of Minera S.A. at the time of the transaction—leaving little doubt that Sánchez de Lozada must have knowledge of the events at issue since they involve his group of holding companies.

### 3. A Conclusory Assertion By Sánchez de Lozada's Counsel About His Alleged Lack of Knowledge or Memory of the Events is Not Sufficient To Quash the Subpoena

According to his counsel, Sánchez de Lozada has no "specific knowledge of the events at issue." (ECF No. 28-1, p. 9). This is apparently "unsurprising" because he did not hold an officer or director role in COMSUR and Iris Mines & Metals S.A. at the time of the companies' sale to Glencore. *Id.* Sánchez de Lozada's counsel's assertion, however, is not credible, given the publicly known facts about Sánchez de Lozada's extensive involvement in and knowledge of

the COMSUR transaction and the large economic benefit he received as a result of the transaction.

Furthermore, Petitioners are entitled to test Sánchez de Lozada's knowledge of the events at issue, through an in-person oral deposition. Notably, Sánchez de Lozada did not submit a declaration under penalty of perjury personally affirming his purported lack of knowledge of the events at issue. Sánchez de Lozada cannot be excused from providing responsive documents and testimony merely because he did not formally occupy a direct officer or director role in COMSUR at the time of its sale. The sale of COMSUR likely generated significant documentation regarding COMSUR's historical mining operations, and Sánchez de Lozada very likely handled these documents, making him a key witness with respect to Petitioners' claims.

### 4. Petitioners Do Not Have More Convenient, Less Burdensome Avenues For Discovery

Sánchez de Lozada's attempts to shift attention to other discovery targets are unavailing. Sánchez de Lozada contends, for example, that Petitioners' discovery "is in no way proportional to the needs of the case given that documents already have been produced by Gibson Dunn and Peter Stein," (ECF No. 28-1, pg. 7), and that "[p]resumably given their more involved roles in COMSUR and the relevant transactions, neither Gibson Dunn nor Mr. Stein moved for an order to quash subpoenas." (ECF No. 28-1, pg. 2). These statements and presumptions, however, are not true.

As an initial matter, no documents have been produced thus far by either Gibson Dunn or Mr. Stein. (Hewett Decl, ¶ 8.) Although Petitioners have reason to believe that documents will be forthcoming from Gibson Dunn, they have not received those documents as of this date. (Hewett Decl., ¶ 8.) Further, Petitioners' deposition of Gibson Dunn will be limited to file arrangement, document retention, and document authentication. (Hewett Decl., ¶ 8.) Moreover,

the representative of Gibson Dunn is not expected to be someone with first-hand knowledge of the events at issue. (Hewett Decl., ¶ 8.) As for discovery from Mr. Stein, Mr. Stein had no responsive documents to produce and testified during his deposition that he knew nothing about the sale of COMSUR to Glencore because he only joined Minera S.A. as a director after the transaction. (Hewett Decl., ¶ 8.)

By comparison, Sánchez de Lozada has unique knowledge of the events at issue as the founder of COMSUR and an owner who very likely earned a considerable amount from the sale of the company to Glencore. (Hewett Decl. Ex. A.) Furthermore, as Sánchez de Lozada himself points out, he is not a party to the arbitration, and therefore, the arbitral tribunal will have no power to request documents from him or order his testimony. Rather than his non-party status being a reason to quash the subpoena, courts have taken such a fact as weighing in favor of enforcing the subpoena. *In re Application of Operación y Supervisión de Hoteles,* 2015 WL 82007, at *6 (S.D.N.Y. Jan. 6, 2015) (noting that "[b]ecause [the discovery target] is not a party to the [foreign proceeding] and the foreign tribunal lacks jurisdiction to compel his testimony, analysis of the first *Intel* factor suggests that the subpoena should be enforced."). It is clear that Sánchez de Lozada is a proper and relevant target for the discovery requested here.

### 5. Sánchez de Lozada's Argument That Obtaining Discovery Is "Premature" Is Unavailing

Sánchez de Lozada's argument that this Section 1782 petition is "premature" is unavailing. Sánchez de Lozada asserts that "nothing is known about the actual scope of the [Petitioners'] claim" and that Petitioners seek irrelevant discovery. Petitioners, however, spent more than 10 pages discussing the scope of their arbitration claim in the original Petition and supporting papers, providing details of the specific events for which Petitioners are seeking discovery from Sánchez de Lozada.

Importantly, in *Intel Corp. v. Advance Micro Devices, Inc.*, the Supreme Court noted that "Section 1782(a) does not limit the provision of judicial assistance to 'pending' adjudicative proceedings," and instead requires only that a proceeding "be within reasonable contemplation." *Intel*, 542 U.S. 241, 258-59 (2004). "The future proceedings must be more than speculative, however, and a 'district court must insist on reliable indications of the likelihood that proceedings will be instituted within a reasonable time.'" *Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.,* 747 F.3d 1262, 1270 (11th Cir. 2014) (quoting *In re Letter of Request from the Crown Prosecution Serv. of the U.K.*, 870 F.2d 686, 692, 276 U.S. App. D.C. 272 (D.C. Cir. 1989). As Ms. Hewett states in her declaration, Petitioners will file their arbitration against Bolivia within the next two weeks, and before the scheduled hearing before this Court on February 9, 2018. (Hewett Decl., ¶ 1.)

**B.    The Court Should Deny Sánchez de Lozada's Motion For Protective Order**

**1.    Sánchez de Lozada Has Not Met His Burden For The Issuance Of A Protective Order**

Sánchez de Lozada claims that the deposition proposed by Petitioners causes an undue burden and expense at this time (ECF No. 31, pg. 2), and invokes Fed. R. Civ. P. 26 to request the Court to issue a protective order prohibiting Sánchez de Lozada's oral deposition. Pursuant to Fed. R. Civ. P. 26(c), the Court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Courts have held that a protective order pursuant to Rule 26 (c) "should be sparingly used and cautiously granted." *See Big Ernie's, Inc v. United States*, 2009 U.S. Dist. LEXIS 81937, at *3 (E.D.Va. 2009) (quoting *Medlin v. Andrew*, 113 F.R.D. 650, 652 (M.D.N.C. 1987)). Furthermore, where the protective order seeks to prohibit the taking of a deposition altogether, it is unusual for a court to grant it and courts have held that "absent extraordinary circumstances, such an order would likely be an

error." *See id.* at *3; *SEC v. Dowdell*, No. 3:01CV00116, 2002 U.S. Dist. LEXIS 15877, at *10-11 (W.D. Va. Aug. 21, 2002); *Salter v. Upkohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979). Accordingly, "the party seeking a protective order bears the weighty burden of showing the existence of good cause for the issuance of a protective order." *Big Ernie's,* U.S. Dist. LEXIS 81937, at *4; *CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y. 1984).

Sánchez de Lozada provides no reason or evidence on why the deposition would cause him annoyance, embarrassment, oppression, or undue burden or expense. He simply invokes Rule 26 (c) and asserts without evidence that Petitioners would have "more convenient, less burdensome avenues for discovery." (ECF No. 31, pg. 2.) Courts have held that "[m]erely characterizing a discovery request as 'overly broad, burdensome, oppressive and irrelevant' will not satisfy the opposing party's burden of showing with specificity why a request is objectionable." *Cappetta v. GC Servs. Ltd. P'ship*, 2008 U.S. Dist. LEXIS 103902, at * 10 (E.D. Va. 2008) (quoting *Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996)). Sánchez de Lozada has therefore failed to meet the burden of proof to show good cause or exceptional circumstances for prohibiting his oral deposition.

### 2. There Is No Legal Basis For Prohibiting The Deposition Until The Arbitration Is Filed Or Until The Arbitral Tribunal Orders Discovery

Sánchez de Lozada's arguments that his "deposition should be prohibited until Petitioners have filed the Arbitration, the scope of the arbitration is understood, and the arbitral tribunal permits discovery to commence" are wholly contrary to the case law and are without merit. As already discussed in Section III.A, in their Petition, Petitioners have described in detail the scope of the arbitration and the relevant events on which Sánchez de Lozada will be deposed. Further, Section 1782 plainly does not require the Arbitration to have been filed or for the arbitral tribunal to permit the discovery for a party to seek discovery through a Section 1782 action. *Intel Corp. v*

*Advance Micro Devices, Inc.* 542 U.S. 241, 247 (2004) (noting that the arbitration "need not be pending or imminent" but can be "in reasonable contemplation"); *see also Goenechea v. Davidoff*, No. CCB-15-3384, 2016 WL 560689, at *2 (D. Md. Feb. 11, 2016) (granting application because petitioner had "requested the evidence for use in reasonably contemplated proceedings that he may file"). Indeed, the purpose of Section 1782 is to enable parties like Petitioners to obtain "federal-court assistance in gathering evidence for use in foreign proceedings." *Intel*, at 247.

### 3. Written Questions Are Inappropriate In This Case And Sánchez de Lozada Should Be Orally Deposed By Petitioners

Sánchez de Lozada's request that any deposition be conducted via written questions as opposed to oral testimony is similarly baseless. Sánchez de Lozada argues that he is a high-profile figure in Bolivia and the purpose of the deposition would be only to confirm his lack of knowledge of the facts at issue. To the extent that Sánchez de Lozada is invoking the "apex doctrine," that doctrine is not applicable here. "The purpose of the apex doctrine is to protect high-ranking officials from discovery abuses when they have no particular direct knowledge of the facts pertaining to the lawsuit, and thus require protection from litigation tactics [used] to create undue leverage by harassing the opposition or inflating its discovery costs." *Intelligent Verification Sys., LLC v. Microsoft Corp.*, 2014 U.S. Dist. LEXIS 198819, at *6 (E. D. Va. 2014) (internal citations and quotations omitted). Sánchez de Lozada is plainly not an "apex official" entitled to protection under the apex doctrine. Sánchez de Lozada is not a high-profile official or executive. He was president in Bolivia fifteen years ago, he lives in the U.S., and maintains a low profile. Additionally, according to Mr. Raber's declaration, he currently does not hold any officer or director position in Minera S.A., the company that owned COMSUR and Iris Mines & Metals S.A. at the time of the facts at issue.

Furthermore, the assertion by Sánchez de Lozada's counsel (not backed up by any declaration executed under penalty of perjury by Sánchez de Lozada himself) that he has no "unique or special knowledge of the dispute between Petitioners, COMSUR, and COMIBOL," (ECF No. 31-1, p. 10), and "no specific knowledge of the events at issue in the Petition," (ECF No. 31-1, p. 9), is patently non credible. As an initial matter, the standard of knowledge for the apex doctrine is not "unique" or "special" knowledge, but personal "direct knowledge" of the facts. Petitioners have thoroughly established above that Sánchez de Lozada was in a position to have personal direct knowledge of the facts at issue in the Petition because (i) he admits he was the founder of COMSUR and held a personal minority interest in that company at the time it was sold to Glencore; (ii) he owned and controlled COMSUR through his ownership of Minera S.A., which in turn owned Iris Mines and Metals S.A., which in turn owned COMSUR when the events at issue occurred; (iii) he was the president of COMSUR's and Iris Mines & Metals S.A.'s holding company when these companies were sold to Glencore; and (iv) he reportedly earned a vast sum of money in the sale of COMSUR. Sanchéz de Lozada misleadingly asserts that at the time of the sale of COMSUR and Iris Mines & Metals S.A. to Glencore, he held no officer or director position in either company.  What Sánchez de Lozada selectively declines to mention, however, is that Minera S.A. was the majority and ultimate owner of Iris Mines & Metals S.A. and COMSUR, and that, at the time of the sale of both companies, he was the president of Minera S.A. (Hewett Decl., ¶ 9).

In any event, Petitioners have the right to orally depose Sánchez de Lozada on the extent of his knowledge and credibility. In cases like this, where the issues involve a tangled set of facts, some of which are difficult to prove by documentation and where there are potentially significant questions of credibility involving the witness, "it has often, and appropriately, been

observed that depositions on written questions are a generally inadequate substitute for an oral deposition since there is no meaningful possibility of follow-up questioning and the inquiring party is denied any opportunity to assess the demeanor, and thus the credibility, of the witness in responding to specific question [sic].")*; *Mill–Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 549 (S.D.N.Y. Feb. 17, 1989) (denying motion for protective order seeking to direct that depositions be taken by written questions); *see also Horvath v. Deutsche Lufthansa, AG*, 2004 WL 241671, at *4 (S.D.N.Y., 2004). For the foregoing reasons, Sánchez de Lozada's request to be deposed via written questions should be denied.

### C. The Cost For Complying With The Document Subpoena Should Not Be Shifted To Petitioners

Sánchez de Lozada should be made to bear his own costs for complying with the subpoena. He claims that the cost of complying with the document subpoena be shifted to the Petitioners because this "would ensure that Sánchez de Lozada is not a vehicle for Petitioners to obtain broad, irrelevant discovery beyond the scope of their arbitration claim." (ECF No. 28-1, p. 11). However, "[t]he mere fact that responding to a discovery request will require the objecting party to expend considerable time, effort and expense consulting, reviewing and analyzing huge volumes of documents and information is an insufficient basis to object to a relevant discovery request." *Cappetta v. GC Servs. Ltd. P'ship*, 2008 U.S. Dist. LEXIS 103902, at *10,11. (E.D. Va. 2008) (internal quotations and citations omitted). Furthermore, as "a party is entitled to information that is relevant to a claim or defense in the matter at issue, and even a nonparty is normally expected to bear some or all of the costs of discovery." *Bell Inc. v. GE Lighting, LLC*, No. 6:14-cv-00012, 2014 U.S. Dist. LEXIS 56170, at *37 (W.D. Va. Apr. 23, 2014) (citing *United Salt Corp.*, No. 1:08-cv-00053, 2009 U.S. Dist. LEXIS 82685, at *5 (W.D. Va. Sept. 9, 2009); *In re World Trade Ctr. Disaster Site Litig.*, No. 21 MC 100 AKH, 2010 U.S. Dist. LEXIS

96819, at *1 (S.D.N.Y. Sept. 14, 2010); *In re First American Corp.,* 184 F.R.D. 234, 241 (S.D.N.Y. 1998)). Additionally, Sánchez de Lozada makes unreasonable calculations of potential costs that even his own counsel admits "could be reduced through the use of search terms and date restrictions." (Raber Decl., ¶ 10.)

### D. Both Of Sánchez de Lozada's Motions Should Be Denied And Costs And Fees Should Be Awarded to Petitioners Because Sánchez de Lozada, Through Counsel, Failed To Meet And Confer As Required By Local Rules

Sánchez de Lozada failed to comply with the meet and confer requirement under Local Rules 7(E) and 37(E) and therefore Sánchez de Lozada's Motion to Quash Subpoena and Motion for Protective Order are unnecessary discovery motions that could have been avoided, at least in part, had counsel for Sánchez de Lozada engaged in a meaningful meet and confer as required by the Federal Rules of Civil Procedure and Local Civil Rules 7(E) and 37(E). Thus, both motions should be denied and Petitioners awarded costs and fees incurred in opposing these Motions.

According to Local Civil Rule 7(E), "[b]efore endeavoring to secure an appointment for a hearing on any motion, it shall be incumbent upon the counsel desiring such hearing to meet and confer in person or by telephone with his or her opposing counsel in a good-faith effort to narrow the area of disagreement." Similarly, Rule 37(E) dictates that "counsel shall confer to decrease, in every way possible the filing of unnecessary discovery motions" and "[n]o motion concerning discovery matters may be filed until counsel shall have conferred in person or by telephone to explore with opposing counsel the possibility of resolving the discovery matters in controversy." Local Rule 37(E) specifically provides that "[t]he Court will not consider any motion concerning discovery matters unless the motion is accompanied by a statement of counsel that a good faith effort has been made between counsel to resolve the discovery matters at issue." With regard to protective orders, according to Rule 26 (c)(1), a motion for protective order "must include a

certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."

Sánchez de Lozada did not comply with these requirements with respect to either Motion. To meet the requirement to confer under Local Rules 7(E) and 37(E) and Fed. R. Civ. P. 26, the moving party must have willfully attempted in good faith to narrow or resolve the discovery matter before asking the Court to engage. As stated in their own certification, counsel for Sánchez de Lozada simply asked Petitioners to withdraw the subpoena in its entirety because they asserted that Sánchez de Lozada had no responsive documents and no specific recollections about the relevant facts. (Odom Decl., ¶¶ 2-3; Hewett Decl., ¶ 2.) Understandably, Petitioners declined to consent to such an offer. Sánchez de Lozada's attorneys also did not attempt to confer on the terms of Sánchez de Lozada's deposition. (*See* Odom Decl., ¶ 3; Hewett Decl., ¶ 3, Mr. Stephen D. Raber, "Certification of Consultation," ECF No. 28, pg. 4).

Counsel's blatant failure to comply with the requirements of Local Rules 7(E) and 37(E) and Fed. R. Civ. P. 26 is demonstrated by the fact that, in their communications with counsel for Petitioners, Sánchez de Lozada's attorneys raised none of the arguments they then raised in the Motion to Quash as to why they consider the subpoena unduly burdensome; e.g., being "unable to determine the precise contours" of the Arbitration; limiting the timeframe for the document requests; or that Sánchez de Lozada would have to review more than 100,000 electronic files. (Raber Decl., ¶ 10.) In fact, with respect to the electronic files, Sánchez de Lozada's counsel asserted to Petitioners' counsel that Sánchez de Lozada had *nothing responsive* in his electronic files. (Odom Decl., ¶ 2.) Further, notwithstanding the fact that Petitioners should be allowed to depose Mr. Sánchez de Lozada orally, counsel for Sánchez de Lozada never proposed that the deposition be conducted via written questions or be postponed until the Arbitration is filed.

Further, although counsel for Sánchez de Lozada certified that they made a "good faith effort . . . to resolve these discovery matters," this "good faith effort" consisted of simply one brief phone call requesting that Petitioners drop their subpoena on the assertion that Sánchez de Lozada had no documents. (Hewett Decl., ¶ 2; Odom Decl., ¶ 3.) Counsel for Sánchez de Lozada also freely admit that they willfully decided *not* to meet and confer on discovery matters that would certainly reduce the burden on Sánchez de Lozada and on which Petitioners would have been amenable to accommodation. Mr. Raber notes that the high costs estimates regarding the review of available electronic files and costs "could be reduced through the use of search terms and date restrictions." (Raber Decl., ¶ 10). However, Sánchez de Lozada's counsel never once asked if Petitioners would be willing to provide more information about the Arbitration or to narrow the scope of discovery by offering search terms or a limited time frame. Instead, counsel decided that because "the negotiation of such terms would also result in Mr. Sánchez de Lozada incurring additional attorney's fees," *id.*, it would disregard this Court's requirement to meet and confer in good faith to reduce the areas of disagreement regarding discovery. As a result, Sánchez de Lozada needlessly bothers the Court with unnecessary discovery motions and causes Petitioners to expend time and resources opposing such unnecessary motions.

The Local Rules and the Federal Rules of Civil Procedure permit Petitioners to recover costs and counsel fees for time spent opposing unnecessary discovery motions as a result of a failure to meet and confer and even impose sanctions. Local Civil Rule 37(H) states that "[s]hould any party or attorney fail to comply with any of the provisions of this Local Rule 37 or otherwise fail or refuse to meet and confer in good faith in an effort to narrow the areas of disagreement concerning discovery, sanctions provided by Fed. R. Civ. P. 37 may be imposed." Local Civil Rule 37(G) further states that "[t]he presentation to the Court of

unnecessary discovery motions . . . as well as any unwarranted opposition to proper discovery proceedings, will subject such party to appropriate remedies and sanctions, including the imposition of costs and counsel fees."

Counsel for Petitioners have had to expend valuable time opposing Sánchez de Lozada's unnecessary motions.  (Hewett Decl., ¶ 6.)  Had Sánchez de Lozada's counsel participated in a meaningful meet and confer, the parties could have narrowed the areas of dispute, and, if needed, approach the Court with the narrow areas of disagreement between the parties.  (Hewett Decl., ¶ 6.)

IV.    **CONCLUSION**

For all of the foregoing reasons, Petitioners respectfully request this Court to deny Sánchez de Lozada's Motion to Quash Subpoena and Motion for a Protective Order and order attorneys' fees and costs for the time expended in responding to Sánchez de Lozada's unnecessary discovery motions.

Dated: January 24, 2018

/s/ Joy Odom
Joy Odom (V.A. Bar No. 84281)
joyodom@quinnemanuel.com
David Orta (*pro hac vice*)
davidorta@quinnemanuel.com
Dawn Yamane Hewett (*pro hac vice*)
dawnhewett@quinnemanuel.com
Brian H. Rowe (*pro hac vice*)
brianrowe@quinnemanuel.com

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, District of Columbia 20005-3314
(202) 538-8000

*Attorneys for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of January, 2018, I filed the foregoing document electronically with the Clerk of the Court using the ECF system, and caused to be served by electronic mail a copy of the foregoing document upon the following individuals:

Stephen D. Raber
Joel S. Johnson
Elizabeth Wilson
WILLIAMS & CONNOLLY LLP
725 12th Street NW
Washington, DC 20005
Phone: (202) 434-5000
Fax: (202) 434-5029
sraber@wc.com
jjohnson@wc.com

*Attorneys for Gonzalo Sánchez de Lozada*

Rani A. Habash
Alexandre de Gramont
DECHERT LLP
1900 K Street NW
Washington, DC 20006
Phone: (202) 261-3300
rani.habash@dechert.com
alexandre.degramont@dechert.com

*Attorneys for Intervenor the Plurinational State of Bolivia*

/s/ Joy Odom

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Joy Odom, VSB # 84281

1300 I Street NW, 9th Floor
Washington, District of Columbia 20005
Phone: (202) 538-8000
Fax: (202( 538-8100
joyodom@quinnemanuel.com

*Attorney for Petitioners*